**TRANSPAC DRILLING VENTURE, 1983–2 by James M. DOBBINS, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 95–5100.

United States Court of Appeals, Federal Circuit.

May 15, 1996.

Arthur H. Boelter, Boelter & Gale, Seattle, Washington, argued, for plaintiff-appellant.

Pamela C. Berry, Attorney, Tax Division, Department of Justice, Washington, DC, argued, for defendant-appellee. With her on the brief were Loretta C. Argrett, Assistant Attorney General, Gary R. Allen and Gilbert S. Rothenberg, Attorneys.

Before PLAGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The question in this case is whether the United States Court of Federal Claims correctly held that assessments of additional partnership tax liability made by the Commissioner of Internal Revenue were timely. *See Transpac Drilling Venture, 1983–2 v. United States,* 32 Fed. Cl. 810 (1995). The assessments resulted from the disallowance of improperly taken business deductions. We affirm.

I.

A. The basic facts, as set forth in the opinion of the Court of Federal Claims, are undisputed.

The appellant, Transpac Drilling Venture 1983–2 (Transpac), is one of a group of 51 oil-drilling partnerships formed and promoted in 1983 by convicted felon John Peter Galanis and his associates as tax shelters. *Id.* at 813. The Galanis organization sold limited partnership interests to investors, who took more than $172 million in deductions on their federal income tax returns to reflect the partnerships' alleged losses. The whole scheme was a sham, in which false losses were created by an intricate system of fictitious transactions that created the appearance of genuine business dealings reflected in checks passing from entity to entity in a circle. *Id.* at 813, 815. After the Internal Revenue Service (IRS) discovered the fraud, several of the participants, including Galanis, were convicted of tax fraud conspiracy, aiding in the preparation of and presenting false or fraudulent tax returns, and racketeering. *Id.* at 813.

Transpac had two general partners, Douglas C. Adams and Churchill Oil and Gas Corporation (Churchill). Adams had a ten percent interest in the partnership, and Churchill owned the remaining ninety percent. *Id.* at 812. Adams and a friend created Churchill " 'specifically to work with John Landon and John Galanis in Transpac Drilling Ventures.' " *Id.* at 814. Although Adams had testified that " '[t]he only activity

that I had with Transpac was basically as a salesman,' " *id.,* he also signed the partnership's tax returns for 1983 and 1984, the years here involved.

In September, 1987, Adams pled guilty to conspiracy to prepare and file "fraudulent and false" tax returns, pursuant to a plea agreement in which he agreed to cooperate with the Securities and Exchange Commission, the United States Attorney's office, and the IRS. *Id.* at 814. Count one of the information, to which Adams pled guilty, stated that a goal of the conspiracy was to "create false tax deductions based on fictitious business expenditures, to be passed on to the limited partners of the various Transpac Drilling Ventures." At Galanis's criminal trial, Adams testified he knew that at least a management fee deduction on the 1983 tax return was false. Adams was aware that the Transpac partnerships did not have the money that they supposedly were keeping in escrow and also knew of the "paper trail" of dealings among the partnerships and generally of "the way that the deals were financed." *Id.* at 815. He also knew about several false statements and omissions in the partnership offering materials. *Id.* In a 1989 speech to the American Association of Accountants, Adams acknowledged that his signing of "fifteen 1983 Transpac partnership tax returns that claimed all of the inflated deductions" was a "felonious act." *Id.* at 815–16.

B. Congress established uniform audit and litigation procedures for partnerships in the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324 (codified as amended in scattered sections of 26 U.S.C.) (Tax Act). That Act defines for each partnership a "tax matters partner" (tax partner):

> (A) the general partner designated as the tax matters partner as provided in regulations, or
>
> (B) if there is no general partner who has been so designated, the general partner having the largest profits interest in the partnership at the close of the taxable year involved (or, where there is more than 1 such partner, the 1 of such

partners whose name would appear first in an alphabetical listing).

If there is no general partner designated under subparagraph (A) and the Secretary determines that it is impracticable to apply subparagraph (B), the partner selected by the Secretary shall be treated as the tax matters partner.

I.R.C. § 6231(a)(7). Under the Act, the tax partner is the representative of the partnership in dealing with the IRS. *See, e.g.*, I.R.C. § 6223(e)(1)(B)(i),(g); I.R.C. § 6224(c)(3); I.R.C. § 6230(e).

Whenever, after audit of a partnership tax return, the IRS determines that additional taxes are owed, it must issue a notice of final partnership administrative adjustment (adjustment notice) to the partners. I.R.C. § 6223(a)(2). Generally, the Commissioner's time for making such additional tax assessments expires three years from the date on which the partnership return was filed. If, however,

any partner has, with the intent to evade tax, signed or participated directly or indirectly in the preparation of a partnership return which includes a false or fraudulent item—

I.R.C. § 6229(c)(1), the time for assessing such additional taxes is six years from the date of filing the return (except that, for partners who sign or participate in the preparation of such return, there is no limitations period). *Id.*

The Act provides for extensions of time within which the Commissioner may assess additional taxes:

**(b) Extension by agreement**

**(1) In general**

The period described in subsection (a) (including an extension period under this subsection) may be extended—

(A) with respect to any partner, by an agreement entered into by the Secretary and such partner, and

(B) with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner (or any other person authorized by the partnership in writing to enter into such an agreement),

before the expiration of such period.

I.R.C. § 6229(b)(1).

The Tax Act authorizes the tax partner to consent to an extension of the statute of limitations for partnership tax assessment, *id.*, and to seek judicial review of additional tax assessments. I.R.C. § 6226(a). If the tax partner does not seek review, another partner may do so. I.R.C. § 6226(b). The Court of Federal Claims has jurisdiction over a petition for readjustment of the partnership items. I.R.C. § 6226(a)(3).

C. Transpac timely filed its partnership returns for 1983 and 1984, which showed substantial losses. Although the Transpac partnership agreement designated Adams as the tax partner, Transpac never formally designated a tax partner for 1983 or 1984, as the IRS regulation contemplated. Treas. Reg. § 301.6231(a)(7)–1T; *Transpac Drilling Venture, 1983–2*, 32 Fed. Cl. at 816. As a result, "the general partner having the largest profits interest in the partnership at the close of the taxable year involved," I.R.C. § 6231(a)(7)(B), was the partner authorized to consent to an extension of the statute of limitations under I.R.C. § 6229(b)(1). This was Churchill.

Within three years of the filing deadline for its 1983 and 1984 returns, Transpac representatives consented to extensions of time for the assessment of additional taxes for those years. *See Transpac Drilling Venture, 1983–2*, 32 Fed. Cl. at 816. For the 1983 tax year, Adams, as president of Churchill, and Alan Friedman, an attorney who had power of attorney to act on behalf of the partnership in connection with its tax returns, each signed separate extension consent forms. *Id.* at 816. For 1984, Adams individually signed the form. *Id.*

In 1989, within six years of, but more than three years after, the filing of Transpac's 1983 and 1984 returns, the IRS assessed additional taxes of $1,411,703 and $588,333 respectively, for those years. The additional assessments reflected the disallowance of the fraudulent deductions Transpac had taken. *Id.* at 812.

Upon receiving the adjustment notices, James M. Dobbins, a Transpac limited part-

ner, filed suit for Transpac in the Court of Federal Claims, seeking readjustment of the partnership tax items to reverse the Commissioner's disallowance of the fraudulent deductions. Transpac's only contention was that the statute of limitations had run by the time the IRS assessed the additional taxes for 1983 and 1984. The Court of Federal Claims granted the government's motion for summary judgment, holding that Adams's and Friedman's consents to an extension of time were valid, and, alternatively, that in any event the IRS action was timely because the six-year statute of limitations applied since Adams had filed false returns with intent to evade taxes. I.R.C. § 6229(c)(1); *Transpac Drilling Venture, 1983–2,* 32 Fed. Cl. at 819.

The court rejected Dobbins's argument that the consent extensions were invalid because (1) Adams signed the 1983 extension on behalf of Churchill, which had been dissolved as of February 1984, and (2) when he signed the 1984 extension, Adams was an agent of the government because of his commitment in the plea agreement to cooperate with the government, which created a conflict of interest that barred Adams from binding the partnership as its tax partner. *Id.* at 818–19.

Alternatively, the court held that the additional tax assessments were timely because the six-year statute of limitations applied. *Id.* at 819. Although it was undisputed that the tax returns contained false or fraudulent items, Dobbins argued that Adams had not signed or prepared them "with the intent to evade tax." I.R.C. § 6229(c)(1). The court, however, ruled that the "government ha[d] carried its burden" on the intent issue. *Transpac Drilling Venture, 1983–2,* 32 Fed. Cl. at 819.

With regard to the 1983 return, the court relied on (1) Adams's statement at Galanis's criminal trial indicating that "he knew, when he signed the Form 1065s for the Transpac partnerships that the claimed management fee deductions had never been paid," *id.;* (2) "Adams' statements to the American Association of Accountants, in which Adams admitted that he knew the signing of the 1983 tax returns was a felonious act," *id.;* and (3)

Adams's "aware[ness] of diversion of money from the escrow fund." *Id.*

With regard to the 1984 tax return, the court characterized Adams's lack of "control over the finances or affairs of the Transpac partnerships," *id.,* despite his general partner status, as a form of "willful blindness." *Id.* As a result,

[t]he court ha[d] no difficulty in holding that the intent of Galanis and members of the Galanis organization can be imputed to Adams under IRC § 6229(c)(1). The purpose of the six-year period is to protect the United States from fraud, and precluding its application in this case because Galanis or his organization was not technically a partner defeats that purpose. Given this imputation, the record is replete with evidence that Galanis and members of the Galanis organization committed tax fraud with an intent to evade taxes. For example, Galanis was convicted of Count 18 of the indictment, which charged that he "unlawfully, wilfully, and knowingly" claimed fraudulent "other deductions" on Transpac 1983–2's 1984 tax return. And although a 26 U.S.C. § 7206 conviction does not in and of itself establish an intent to evade tax, as the conviction requires a different level of scienter, the conviction in addition to the other evidence in the record establishes Galanis' intent to evade tax.

*Id.* at 819–20.

Finally, the court rejected Dobbins's argument that because of Transpac's fraudulent nature, no valid partnership existed under state law, and therefore that the Tax Act, including I.R.C. § 6229(c)(1), was inapplicable:

The Code broadly defines partnership, for the purposes of the [Tax Act] rules, to include a "syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation or venture is carried on ..." IRC § 761. *See* IRC §§ 6031(a); 6231(a)(1)(A). Assuming that Transpac 1983–2 failed to be a true partnership under state law, it could still be classified as a group carrying on a venture or some similar characterization under the definition. Moreover, the [Tax Act] part-

nership provisions apply in any event because Transpac 83–2 filed partnership returns for the years in question. IRC § 6233(a); 26 CFR § 301.6233–1T(a). In addition, plaintiff alleged in its complaint that it was a partnership. Plaintiff cannot now, in its reply brief, disavow the facts stated in its pleading.

*Transpac Drilling Venture, 1983–2,* 32 Fed. Cl. at 820.

## II.

Before this court, Dobbins renews the contentions he made in the Court of Federal Claims (1) that the extensions for assessment of additional tax were invalid because the signers were not authorized to execute them, and (2) that the six-year statute of limitations is inapplicable. We hold that the Court of Federal Claims correctly ruled that the additional assessments were timely because the six-year statute applies, and therefore do not decide the alternative issue whether the consent extensions were proper.

For the six-year statute of limitations to apply, a "partner" must have signed "a partnership return which includes a false or fraudulent item" "with the intent to evade tax." I.R.C. § 6229(c)(1). It is undisputed that Transpac's 1983 and 1984 returns contained "false or fraudulent item[s]." The questions therefore are whether (A) Transpac was a "partnership" and in signing its returns, whether Adams acted as a "partner," and (B) whether Adams signed the returns with "the intent to evade taxes." The answer to these questions is yes.

**▮▮▮ A.** The Court of Federal Claims correctly concluded that Transpac constituted a partnership under the Internal Revenue Code. Transpac filed partnership returns for 1983 and 1984, its partners presumably took advantage in their individual tax returns of the losses Transpac reported in those returns, and in its complaint in the Court of Federal Claims, Transpac was described as "a limited partnership organized under the laws of the State of Delaware," and repeatedly was referred to as a "partnership." Dobbins cannot now disavow Transpac's partnership status.

Transpac was a partnership under the Internal Revenue Code even though it was organized and operated for improper or illicit purposes. As the Court of Federal Claims noted, the broad definition of "partnership" in the Internal Revenue Code does not limit such entities to those organized for lawful businesses. Section 761(a) of the Code defines "partnership" to include "a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on." I.R.C. § 761(a). The Tax Act incorporates this definition. *See* I.R.C. §§ 6031(a), 6231(a)(1)(A).

Dobbins also contends that under state law Adams was not a "partner" in Transpac because he did not contribute "money, goods, or skill" to its operation. The Tax Act defines "partner" to mean:

(A) a partner in the partnership, and

(B) any other person whose income tax liability under subtitle A is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership.

I.R.C. § 6231(a)(2). At the very least, Adams's ten percent ownership interest as a general partner made him an "other person whose income tax liability . . . is determined . . . by taking into account . . . partnership items." *Id.*

Moreover, the complaint in the Court of Federal Claims described Adams as "the original [tax partner] of the partnership." Once again, Dobbins cannot now disavow that statement.

**B.** The remaining issue is whether Adams signed Transpac's 1983 and 1984 returns with "the intent to evade tax." We uphold the Court of Federal Claims affirmative answer to that question.

**▮▮▮ 1.** Contrary to Dobbins's contention, there is no requirement in § 6229(c)(1) that the taxes the signer of the partnership return intended to evade must have been the signer's own. There is no such limitation in the statute itself: it refers only to the "intent to evade taxes." *Id.* In signing Transpac's returns, which reported false losses, Adams knew that the limited partners would use

those losses to reduce their own taxes. The statute thus covers this case because, in signing the false returns, Adams intended to evade the taxes of the limited partners.

Dobbins has provided no convincing reason why the statute should be limited in the way he urges. A purpose of the "intent to evade taxes" requirement is to protect limited partners from an extension of the Commissioner's time for assessing additional taxes against them where the partner who signed the return did not know that it contained false items. That is not the present case.

The cases upon which Dobbins relies involved wholly different statutory provisions and issues. There the intent-to-evade-taxes requirement served quite different functions from its purpose here in extending the statute of limitations for assessing additional taxes.

■ 2. The evidence supports the Court of Federal Claims determination that Adams signed the 1983 and 1984 false returns with the intent to evade tax.

There was ample evidence that Adams filed the 1983 returns with that intent. Adams had pled guilty to conspiracy to commit tax fraud. He admitted that he knew that the management fee deductions shown on the return were false. In his 1989 speech to the American Association of Accountants, he admitted that his signing of "fifteen 1983 Transpac partnership tax returns that claimed all of the inflated deductions" was a "felonious act." *Transpac Drilling Venture, 1983–2,* 32 Fed. Cl. at 815–16. Although that admission did not explicitly refer to the false 1983 return involved in this case, it shows his awareness of the falsity of the returns of the various Transpac partnerships and by necessary implication of the return in this case.

*Wright v. Commissioner,* 84 T.C. 636, 1985 WL 15333 (1985), which Dobbins cites, is not to the contrary. That case does not hold that a guilty plea may not be considered in determining intent to evade tax. It holds only that a criminal tax fraud conviction does not collaterally estop taxpayers from denying in a civil action that their tax underpayment was due to fraud. *Id.*

Finally, Adams admitted in the criminal case that he knew about the "paper trail" and "the way that the deals were financed." *Id.* According to the evidence in the criminal case, this financing principally derived from the marketing of tax shelters to investors, who received tax benefits resulting from the partnerships' claims for false business deductions illegally documented by the check-swapping "paper trail."

The evidence showing Adams's intent to evade taxes when he signed the 1984 return is not as extensive as that relating to the 1983 return, but still is sufficient to establish his intent for 1984. Transpac was a continuing enterprise that operated in the same way in both years and the fraudulent tax losses shown for both years were integral parts of the same scheme of creating fictitious tax losses for the limited partners. There is no suggestion that Transpac's purpose in filing false returns was any different in 1984 than it had been in 1983, or that Adams believed that it was different. *See Bahoric v. Commissioner,* 363 F.2d 151, 154 (9th Cir.1966) ("Petitioners say that fraud must be established for each year where fraud is asserted. That is true. But still, a pattern of conduct over a course can be applied to its segments." (footnote omitted)). Many of the facts supporting the conclusion that Adams intended to evade taxes in signing the 1983 return also support the same conclusion for the 1984 return.

CONCLUSION

The judgment of the Court of Federal Claims is

*AFFIRMED.*