# United States Court of Appeals for the Federal Circuit

---

**BASR PARTNERSHIP, WILLIAM F. PETTINATI, SR., Tax Matters Partner,**
*Plaintiffs-Appellees*

v.

**UNITED STATES,**
*Defendant-Appellant*

---

2014-5037

---

Appeal from the United States Court of Federal Claims in No. 1:10-cv-00244-SGB, Judge Susan G. Braden.

---

Decided: July 29, 2015

---

THOMAS A. CULLINAN, Sutherland Asbill & Brennan LLP, Atlanta, GA, argued for plaintiffs-appellees.

ANDREW M. WEINER, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by DAMON TAAFFE, TAMARA W. ASHFORD, GILBERT STEVEN ROTHENBERG, MICHAEL J. HAUNGS.

BRYAN CAMP, Texas Tech University School of Law, Lubbock, TX, for amicus curiae Bryan T. Camp.

PAULA MARIE JUNGHANS, Zuckerman Spaeder LLP, Washington, DC, for amicus curiae American College of Tax Counsel.

_____

Before PROST, *Chief Judge,* O'MALLEY, and CHEN, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* CHEN.

Concurring opinion filed by *Circuit Judge* O'MALLEY.

Dissenting opinion filed by *Chief Judge* PROST.

CHEN, *Circuit Judge.*

This case is an appeal from a tax readjustment and refund action filed in the U.S. Court of Federal Claims (Claims Court). Section 6501(a) of the Internal Revenue Code (I.R.C. or Code) prohibits the Internal Revenue Service (IRS) from assessing tax if more than three years has elapsed from the date of the tax return. Section 6501(c)(1), however, recognizes an exception to this three-year rule and suspends the statute of limitations in cases involving "a false or fraudulent return with the intent to evade tax." The Claims Court determined that § 6501(a)'s three-year statute of limitations barred the IRS from administratively adjusting, in 2010, the 1999 partnership tax return filed by plaintiff-appellee BASR Partnership (BASR). *See BASR P'ship v. United States*, 113 Fed. Cl. 181 (2013). The Government appealed. Although the Government does not argue that BASR itself acted with the intent to evade tax, the Government does contend that BASR's outside counsel, an attorney involved in structuring certain financial transactions reported on the 1999 return, acted "with the intent to evade tax." According-ing to the Government, this attorney's conduct triggered § 6501(c)(1) and suspended the three-year limitation on the IRS's ability to assess and impose tax on BASR for the

1999 tax return. The Claims Court disagreed and held that § 6501(c)(1)'s suspension of the three-year limitation applies only when the taxpayer—and not a third party—acts with the requisite "intent to evade tax." Because we agree with the Claims Court, we affirm.

BACKGROUND

I

The IRS has authority to review tax returns filed by a taxpayer. I.R.C. § 6201(a). During this review, if the IRS concludes that the taxpayer has underpaid, the IRS assesses those taxes and imposes any additional penalties for the underpayment. *Id.*; *see, e.g.*, § 6663. As a general rule, the IRS must make any such assessment "within 3 years after the return was filed." I.R.C. § 6501(a). The Code establishes certain exceptions that may extend or suspend this three-year limitations period. *See generally* I.R.C. § 6501(c). Section 6501(c)(1) recognizes one such exception: "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed . . . at any time." I.R.C. § 6501(c)(1).

The concept of limiting the time period during which the IRS could assess tax originated almost 100 years ago in the same statutory provision that authorized the IRS to impose penalties for underpayment. *See* Revenue Act of 1918, Pub. L. No. 54-254, 40 Stat. 1057. Section 250(b) of the 1918 Act authorized the IRS to impose penalties when an underpayment resulted either from negligence or a "false or fraudulent" intent to evade the tax. The Act barred the IRS from imposing a penalty if "the return is made in good faith and the understatement of the amount in the return is not due to any fault of the taxpayer." *Id.* Along the same lines, § 250(d) limited the time during which the IRS could assess tax after the filing of a tax return, but explicitly provided that this period could be suspended if the case involved a "false or fraudulent return[] with intent to evade the tax." After recodification

and reorganization the provision authorizing penalties for fraudulent returns was separated from the section governing extension and suspension of the statute of limitations. *Compare* I.R.C. § 6663(a), *with* I.R.C. § 6501(c)(1).

The taxes at issue here relate to the activities of a partnership. Under the Code, partnerships like BASR are "pass-through" entities. I.R.C. § 701. This means that although the partnership prepares a tax return, I.R.C. § 6031, the partnership itself does not incur tax liability, I.R.C. § 701. Instead, any tax liability arising from items on a partnership return "passes through" to the individual partners, who are then liable for their "distributive share" of the partnership's gains and losses. *Id.* §§ 701–702. Because a partnership and its individual partners are treated differently for taxation purposes, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), which established "coordinated procedures for determining the proper treatment of 'partnership items' at the partnership level in a single, unified audit and judicial proceeding." *Alpha I, L.P., ex rel. Sands v. United States*, 682 F.3d 1009, 1019 (Fed. Cir. 2012).

Under TEFRA, when the IRS disagrees with the tax treatment of a partnership item on any return, the IRS must determine the proper treatment of the partnership item at the partnership level. I.R.C. § 6221. If the IRS finds an underpayment, the IRS must send a final partnership administrative adjustment (FPAA) to the partners. *Id.* §§ 6223(a)(2), 6223(d)(2), 6225(a). If the partnership disagrees, it may file a "petition for readjustment" in one of several fora, including the Claims Court. *Id.* § 6226(a); *see also* 28 U.S.C. § 1508 ("The Court of Federal Claims shall have jurisdiction to hear and to render judgment upon any petition under section 6226 . . . of the Internal Revenue Code of 1986.").

## II

The facts relevant to this appeal are undisputed. In 1999, the members of the Pettinati family were about to realize a large capital gain from the sale of their printing business. Before they consummated the sale, Erwin Mayer (Mayer), a lawyer in the Chicago office of the now-defunct law firm of Jenkens & Gilchrist, contacted the Pettinati family and proposed "a tax advantaged investment opportunity." J.A. 1054. Believing that this opportunity could result in tax savings, the Pettinatis hired Jenkens & Gilchrist, which recommended a series of transactions that could reduce the amount of gain reported to the IRS upon the sale of the family printing business. At the end of these transactions, all stock in the printing business would be owned by a family partnership, BASR. The Pettinatis could then sell the printing business by directing BASR to sell its shares to the buyer.

In addition to recommending the transactions, three attorneys at Jenkens & Gilchrist signed a tax opinion document attesting to the legitimacy of the transactions. Mayer characterized the transactions as a "tax-advantaged investment opportunity." J.A. 1054. Finally, the Pettinatis received guidance on reporting these transactions on their 1999 tax returns in a manner that was consistent with the opinion letters. The Pettinatis hired Malone & Bailey PLLC to prepare their tax returns. While Malone & Bailey had a long-standing relationship with the Pettinatis, it had no prior connection with Jenkens & Gilchrist. Malone considered the legal opinions provided to the Pettinati family when preparing the BASR and Pettinati tax returns. Ultimately, by creating the BASR Partnership, the Pettinatis greatly reduced the tax liability arising from the sale of their printing business.

Five years later, in 2004, the IRS received a list of Jenkens & Gilchrist clients, including the Pettinatis, who

had employed this type of tax-advantaged investment structure. In 2010, the IRS issued a FPAA to BASR for the tax returns that reflected the sale of the printing business. In the FPAA, the IRS explained that BASR "lacked economic substance" because its "principal purpose . . . was to reduce substantially the present value of its purported partners' . . . aggregate federal tax liability." J.A. 43. The IRS adjusted the tax effect of the printing business sale accordingly, significantly increasing the Pettinatis' tax liability for the 1999 tax returns.

After filing this action in the Claims Court, BASR sought summary adjudication of its readjustment and refund claim, arguing that the adjustments and increased tax liability in the FPAA were untimely under the three-year statute of limitations found in I.R.C. § 6229(a)[1] and

---

[1] Section 6229 governs the limitations period for making assessments attributable to partnership items. This statute includes a provision that suspends the three-year limitations period when a *partner* acts with the intent to evade tax. I.R.C. § 6229(c)(1). BASR argued that § 6229(c)(1) supplants § 6501(c)(1), as the statute that the IRS must use to avail itself of the unlimited limitations period. According to BASR, the Government could not prove that a partner acted with intent to evade tax and therefore the FPAA was untimely because the IRS could not avail itself of an unlimited assessment period. The Claims Court rejected this argument as soundly foreclosed by our case law. We agree that § 6229(c)(1) does not supplant § 6501(c)(1) in a partnership case. *See AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States*, 481 F.3d 1351 (Fed. Cir. 2007); *Prati v. United States*, 603 F.3d 1301, 1307 (Fed. Cir. 2010) ("Sections 6501 and 6229 do not operate independently to allow a taxpayer to assert one in isolation and thereby render an otherwise timely assessment untimely."); *see*

I.R.C. § 6501(a). The Government acknowledged these general limitations periods, but asserted that even though more than three years had passed since BASR's tax returns were filed, this period remained open under I.R.C. § 6501(c)(1) and I.R.C. § 6229(c)(1) because the case involved "a false or fraudulent return with the intent to evade tax." The IRS concedes that the Pettinatis themselves lacked the intent to evade tax. *See* Oral Argument at 9:49-10:06 *available at* http://www.cafc.uscourts.gov/opinions-orders/0/all/14-5037 ("The government concedes that 6229(c)(1) doesn't apply because, as you say Your Honor, it's not the partner who commits the fraud, but in fact the taxpayer's hired tax professional who set up the shelter for him.") The IRS similarly does not allege that Malone & Bailey, who prepared the relevant tax returns, acted with intent to evade taxes or to have the Pettinatis evade taxes. The IRS asserted only that Mayer acted with the intent to evade tax when he conceived of and marketed the tax-advantaged investment structure. Contrary to the opinion letters supplied to the Pettinatis by Jenkins & Gilchrist, Mayer knew these transactions were "fraudulently designed to generate large non-economic tax losses for wealthy taxpayers."[2] J.A. 945.

---

*also Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r*, 114 T.C. 533, 540–41 (2000) ("[S]ections 6229 and 6501 contain alternative periods within which to assess tax with respect to partnership items, with the later-expiring period governing in a particular case.").

[2] On October 19, 2010, Mayer pleaded guilty to conspiracy and tax evasion charges relating to his design and implementation of numerous fraudulent tax shelters. *United States v. Daugerdas, et al.*, No. 1:09-cr-00581, (S.D.N.Y. Oct. 19, 2010). As part of the guilty plea proceedings, Mayer admitted that he knew that these tax shelters would not be allowed by the IRS if scrutinized

In reply, BASR argued that the three-year statute of limitations is suspended only when the *taxpayer* intended to evade tax and, therefore, Mayer's admitted fraud was insufficient and too remote. Ultimately, the Claims Court agreed and granted BASR's motion for summary judgment. The Government filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review the grant or denial of summary judgment *de novo*. *Salman Ranch Ltd. v. United States*, 573 F.3d 1362, 1370 (Fed. Cir. 2009). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this case, the parties do not dispute the relevant facts. We are therefore presented solely with a question of statutory interpretation, which we review *de novo*. *AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States*, 481 F.3d 1351, 1353 (Fed. Cir. 2007).

The present case requires us to determine whether § 6501(c)(1)'s suspension of the three-year statute of limitations is only triggered by the intent of the taxpayer, as urged by BASR, or whether, as the Government maintains, the requisite intent can be that of a third-party who is more remotely connected with the relevant tax return.[3]

---

because the transactions had no genuine, non-tax business reasons and had no reasonable possibility of resulting in profit. By filing a declaration in the present proceedings, Mayer continues to maintain that he acted with the intent "to fraudulently evade the federal income tax [that the Pettinatis] would otherwise owe on capital gains from the sale of their business." J.A. 946.

[3]   Importantly, we need not decide whether the term "taxpayer," as used in § 6501(c)(1), can be interpreted to

Statutory interpretation begins with the words of the statute. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002). "The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* (internal quotation marks omitted). This inquiry "ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal quotation marks omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

After examining the overall statutory scheme of the Code, the case law, and § 6501(c)(1)'s historical roots, we

---

encompass the actions of a taxpayer's authorized agents. The government does not allege—nor under the undisputed facts could it allege—that Mayer acted as an authorized agent of BASR or the Pettinatis in connection with the filing of the tax returns at issue here. The government simply argues that the "intent to evade tax" referenced in § 6501(c)(1) can be untethered to the filing of the return itself—*i.e.*, can be the intent of someone proffering investment advice, but not making decisions regarding or making representations on the tax returns themselves. Because we reject that broad reading of § 6501(c)(1), we need not decide whether the intent of some other third party—one more closely connected to the tax preparation and filings themselves—might be relevant. *But see Loving v. IRS*, 742 F.3d 1013, 1017 (D.C. Cir. 2014) ("Put simply, tax-return preparers are not agents. They do not possess legal authority to act on the taxpayer's behalf. They cannot legally bind the taxpayer by acting on the taxpayer's behalf.").

conclude that § 6501(c)(1) suspends the three-year limitations period only when the IRS establishes that the *taxpayer* acted with the intent to evade tax. Because the Government concedes that it cannot show that either the partnership or any of its partners acted with the intent to evade tax, summary judgment in favor of BASR was proper.

I

Section 6501(c)(1) provides that "[i]n the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed . . . at any time." On appeal, the Government contends that the unlimited limitations period is triggered whenever any individual acts with the intent to evade tax and the tax return ultimately filed contains a falsity, without regard to how remotely related that individual is to the actual tax return or to whether the taxpayer appreciates that individual's intentions. BASR counters that the Claims Court correctly concluded that § 6501(c)(1)'s suspension of the statute of limitations is triggered only when the taxpayer acts with intent to evade tax,[4] and that the statutory scheme and history compel this conclusion.

---

[4]    In reaching its decision, the Claims Court noted that § 6501(a) defines the term "return" as "the return required to be filed by the taxpayer." The Claims Court then incorporated this definition into § 6501(c)(1) and thereby concluded that the statutory language limited the suspension to cases where the taxpayer possesses fraudulent intent. *BASR P'ship*, 113 Fed. Cl. at 192 ("Because the language of 6501(a) is expressly limited to a return filed by the 'taxpayer,' the fraudulent intent referenced in I.R.C. § 6501(c) is by implication limited to fraud by the taxpayer."). Although we disagree that this definition renders the meaning of § 6501(c)(1) clear and unambigu-

We recognize that Section 6501(c)(1) is silent as to which party or parties must have the requisite fraudulent intent to suspend the three-year statute of limitations for pursuing a past underpayment. But that silence alone does not automatically compel the conclusion that Congress intended that actions by parties other than the taxpayer could suspend the three year statute of limitations. The government's argument that we should simply focus on the fraudulent nature "of the return," misses the mark. A fraud is only committed via submission of a document when a person acting with an intent to defraud makes a false entry on that document. The reference to a fraudulent return in § 6501(c) must be understood in context—by reference to the intent to evade tax language in that same statutory section. It is to interpreting that language which we must turn.

Under Supreme Court precedent, we cannot determine the meaning of the statutory language without examining that language in light of its place in the statutory scheme. Indeed, the Supreme Court recently emphasized the importance of looking at the statutory context when determining whether a statutory provision has a plain and unambiguous meaning. *Yates v. United States*, 135 S. Ct. 1074, 1081–82 (2015) ("Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, '[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole." (quoting *Robinson v. Shell Oil Co.*, 519 U.S. at 341)); *see also Barnhart*, 534 U.S. at 450 (acknowledging that the inquiry into the plain meaning of a statute ceases

---

ous, the inquiry into the plain meaning of this statute does not end here.

only after determining that this meaning is "coherent and consistent" with the statutory scheme).

The other provisions in the Code relating to fraudulent conduct strongly suggest that the Code confines the "intent to evade tax" inquiry to the taxpayer's intent. The precursor statute to § 6501(c)(1), in particular, confirms this understanding. These sources lead us to conclude that the reading of § 6501(c)(1) most "coherent and consistent" with the statutory scheme is one that limits the application of this provision to cases involving a false or fraudulent return where the taxpayer acted with the intent to evade tax.[5]

## A

Section 6501(c)(1) is not the only Code provision that deals with the consequences of intentional tax evasion. A survey of other fraud-related provisions of the Code reveals that they contemplate fraud *by the taxpayer*, as opposed to by a person who merely contributed, albeit in a fraudulent way, to the filing of an inaccurate tax return.

## 1

Ordinarily, the IRS's tax assessments are presumed correct, and the taxpayer has the burden of challenging this determination. *United States v. Fior D'Italia, Inc.*,

---

[5] The Government also stresses the Supreme Court's recognition, in *Badaracco v. Commissioner*, that "'[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government.'" 464 U.S. 386, 391 (1984) (quoting *E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924)). In contrast to the present case, there was no indication in *Badaracco* that the Court's interpretation was inconsistent or incoherent in the greater statutory scheme.

536 U.S. 238, 242 (2002).  When alleging taxpayer fraud, however, the IRS bears the burden.   I.R.C.  7454(a). Section 7454(a) provides that "[i]n any proceeding involving the issue whether the *petitioner* has been guilty of fraud with intent to evade tax," the IRS bears the burden of proving the element of fraud.  *Id.* (emphasis added); *see Badaracco*, 464 U.S. at 399.  Thus § 7454(a) indicates that, when pursuing fraudulent conduct, Congress considered the fraudulent intent of only the taxpayer, not of a third-party who advised or assisted the taxpayer. Section 7454(a) specifically identifies the "petitioner's," or *taxpayer's* fraud and, by its plain terms, neither this provision nor the other fraud-related Code provisions discussed below countenance fraud committed by a third party that infected the taxpayer's return.

The  dissent  suggests  that § 7454(a)'s express reference to "the petitioner" indicates that Congress knew how to  limit  the  referenced  intent  to  that  of  the  taxpayer. Dissenting Op. 4.  The dissent attempts to further diminish the  import of this statute by relying on an isolated sentence in the legislative history of this provision.  *Id.* True enough, the legislative history explains that Congress shifted the burden of proving fraud from the taxpayer to the IRS in recognition of the "penal" nature of proceedings involving allegations of fraud.  *Id.* (citing S. Rep. No. 70-960, at 38 (1928)).  The legislative history continues, however, by specifying that "the commissioner should  be  placed  in  the  position  of  party  plaintiff and *compelled to carry the burden of proving fraud whenever it is an issue in the case.*"  S. Rep. No. 70-960, at 38 (emphasis added).  When read together with the statute's reference  to the petitioner's intent to evade tax, the Senate Report reinforces the conclusion that, "whenever [fraud] is an issue in the case," it was fraud by the taxpayer, not by anyone else, that Congress sought to police.  Furthermore, Congress intended for the government to always carry the burden of proof for any fraud allegation.

Taken to its logical conclusion, the dissent's interpretation, and that of the Government, would allow the IRS to shift back its statutory burden of proof—and force the taxpayer to disprove fraud—whenever the IRS alleges that a party other than the taxpayer committed fraud. Not only would that create an illogical, party-specific divergence when it comes to burdens of proof for fraud, the outcome would directly conflict with the above-referenced congressional intent. *See also Revenue Act of 1928: Hearing on H.R. 1 Before the S. Comm. On Finance,* 70th Cong. 25 (1928) (testimony of Hugh Satterlee, Chairman, American Bar Association Committee on Federal Taxation) (criticizing how fraud allegations were handled at that time because "there ha[d] been cases . . . where in order to avoid a running of the statute of limitations the commissioner charged fraud without a scintilla of evidence," placing taxpayers in the difficult position of having to *disprove* the fraud charged against them).

2

Our conclusion is further supported by the Government's interpretation of another fraud-related Code provision, I.R.C. § 6663(a), which requires the IRS to impose fraud penalties. Section 6663(a) provides that "[i]f any part of any underpayment of tax required to be shown on a return is due to fraud, there *shall* be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud." I.R.C. § 6663(a) (emphasis added). Like § 6501(c)(1), § 6663(a) does not specify whether the "fraud" that triggers the statutory remedy (§ 6501(c)(1): suspension of the statute of limitations; § 6663(a): 75 percent penalty) must be attributable to the taxpayer. Instead, in both provisions a form of the word "fraud" describes the tax return, rather than a person (§ 6501(c)(1): "fraudulent"; § 6663(a): "due to fraud").

Despite the similarities between § 6501(c)(1) and § 6663(a), the Government contends that § 6663(a)'s fraud penalty applies only when the taxpayer, not a third party, commits fraud.[6]  Appellant's Br. 48–49 ("[T]he 75-percent fraud penalty under I.R.C. § 6663 is intended to punish and deter wrongful conduct and should therefore be imposed on the taxpayer only if the taxpayer is culpable." (citation and internal quotation marks omitted)).  Yet, nothing in the statute or legislative history supports a result in which the IRS interprets § 6663(a), on the one hand, to allow it to penalize the taxpayer only for his own fraud, but interprets § 6501(c)(1), on the other hand, to prolong the IRS's ability to penalize the taxpayer for fraud committed by others.  We see no basis in the statutory language or legislative history of the two provisions to support the Government's conflicting interpretations of who may be the source of the fraud that triggers these provisions.

3

Finally, the Government's broad interpretation of § 6501(c)(1), if applied to other code provisions, could have unintended and unfortunate consequences.  For example, it could prevent taxpayers from receiving an extension for payment of a tax deficiency under I.R.C. § 6161(b)(3).  Section 6161 prohibits the IRS from granting an extension when the tax deficiency in question is "due to negligence, to intentional disregard of rules and regulations, or to fraud with intent to evade tax."  Like the other statuto-

---

[6]  The Government also argues that § 6663(a)'s fraud penalty is discretionary, and therefore the Government will not assess a penalty against an innocent taxpayer when it was a third party that caused the return to be fraudulent.  That argument appears foreclosed by the language of § 6663(a), which states that the penalty "shall be added" in cases of fraud.

ry provisions discussed above, § 6161 does not expressly specify whether a third-party's negligent or fraudulent conduct would prevent the taxpayer from receiving an extension. If the Government prevails in its view that § 6501(c)(1) permits the IRS to look beyond the taxpayer for the requisite intent, the same would surely apply under § 6161.

B

To support its interpretation, the Government urges us to follow the lead of the Tax Court and the Second Circuit. According to the Government, each of these courts has previously decided that the fraud of a third-party may trigger the unlimited assessment period of § 6501(c)(1). Neither of the cases helps the Government's case. As discussed further below, we do not find the reasoning of the Tax Court persuasive and, contrary to the Government's assertion, the Second Circuit has not actually decided this issue.

1

In the Tax Court case, *Allen v. Commissioner*, the IRS sought to invoke § 6501(c)(1)'s unlimited limitations period to assess tax on a tax return where the tax preparer claimed false and fraudulent deductions, unbeknownst to the taxpayer. 128 T.C. 37, 38 (2007). After conducting a limited analysis of the text of § 6501(c)(1), the Tax Court concluded that a tax preparer could supply the necessary intent to evade tax. *Id.* at 42. The Tax Court's reasoning parallels the arguments presented by the Government in the present case, none of which alters our conclusion. As previously noted, we do not read the Supreme Court's statements in *Badaracco* as requiring us to adopt the Government's interpretation of the statute of limitations here. *See id.* at 40.

In addition, although the Tax Court recognized how this interpretation would affect the application of the

fraud penalty provision in § 6663(a), the court's analysis did not consider how its interpretation conflicted with the IRS's interpretations of Code provisions § 7454(a) and § 6161, discussed above. *See id.* at 41. Ultimately, the Tax Court seemed assuaged by the fact that its interpretation of the statute would have no practical effect, as the IRS was not actually seeking the fraud penalty in that case. *Id.*; *see also id.* at 42 ("We finally note that respondent is seeking to collect only the deficiency in tax from petitioner. Respondent is not asserting the fraud penalty against petitioner.").

We are not so comforted. True enough, the Government now asserts that the fraud penalty should be "imposed on the taxpayer only if the taxpayer is culpable." Appellant's Br. 49. Nevertheless, if we accept the Government's interpretation of § 6501(c)(1), the Government would be free to use that holding to impose the fraud penalty on taxpayers based on attenuated third-parties alleged to have the requisite fraudulent intent. In fact, § 6663(a)'s "shall" language apparently requires the Government to pursue the fraud penalty in this situation. *See* I.R.C. § 6663(a) ("If any part of any underpayment of tax required to be shown on a return is due to fraud, there *shall* be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud." (emphasis added)).

Finally, finding that it was not "unduly burdensome for taxpayers to review their returns for items that are *obviously* false or incorrect," the Tax Court rejected the taxpayer's argument that using the tax preparer's fraud to suspend the limitations period under § 6501(c)(1) would unfairly burden the taxpayer. *Id.* at 41 (emphasis added). In this case, however, that reasoning does not apply. BASR, the taxpayer that signed the return, had a third-party accountant who prepared the return and yet another step removed from Mayer, the lawyer who structured the fraudulent tax vehicle. There are no allegations that

BASR, or even its accountant, knew or should have known that the tax return was false or incorrect, much less that it was "obviously" false or incorrect. Even if we were to find the *Allen* court's reasoning persuasive, that decision would be distinguishable on the facts.

For these reasons, the Tax Court's reasoning in *Allen* does not persuade us that § 6501(c)(1) necessarily encompasses situations where an attorney advising on financial transactions, but not involved with the preparation of the taxpayer's return, acts with intent to evade tax.

2

The Government's reliance on *City Wide Transit, Inc. v. Commissioner* is also misplaced. In that case, City Wide, the taxpayer, "concede[d] that . . . City Wide's returns trigger the tolling provision if we find that [the tax return preparer] filed them with the intent to evade City Wide's taxes."). 709 F.3d 102, 107 (2d Cir. 2013). Thus, in *City Wide*, the Second Circuit confronted only the issue of whether the person who prepared the tax returns acted with the intent to evade taxes.

> In front of the tax court, City Wide argued that it was not liable for the returns [the tax return preparer] prepared where '(1) [City Wide] did not know of the preparer's defalcations; [and] (2) [City Wide] did not sign or knowingly allow to be filed a false return . . . .' The Commissioner anticipated these claims on appeal and rebutted them in its opening brief. City Wide, however, conceded these issues in its response brief. Moreover, each member of this panel asked City Wide whether it had intended this concession, and City Wide responded affirmatively to each of us in turn. Accordingly, we accept this concession without deciding whether certain factual situations might arise that sever the tax *payer's* liability from the tax-*preparer's* wrongdoing.

*City Wide*, 709 F.3d at 107 n.3 (citations omitted). Contrary to the Government's assertions, *City Wide* did not actually address the question of whether the tax preparer's intent was sufficient to trigger § 6501(c)(1). *Id.* at 107. Accordingly, *City Wide* has no bearing on the interpretation of § 6501(c)(1).

## II

Based on the statutory scheme and the absence of persuasive case law, we cannot agree with the Government that § 6501(c)(1) unambiguously permits the suspension of the limitations period when the taxpayer lacked fraudulent intent. The statutory scheme actually seems to point in the opposite direction.

It is also worth noting that the Government's interpretation is of relatively recent vintage. The IRS previously held the exact opposite position on the scope of § 6501(c)(1) than the one it asserts in the present case. Namely, in a 2001 Field Service Advisory, the IRS concluded that, although "[s]ection 6501(c)(1) does not by its express language require that the 'intent to evade tax' be the personal intent of Taxpayer[,] [w]e nonetheless conclude that the fraudulent intent of the return preparer is *insufficient* to make section 6501(c)(1) applicable." Field Service Mem. 200104006, 2001 WL 63261. The IRS obviously changed its position on the interpretation of § 6501(c)(1) at some point between 2001 and 2005, when the IRS issued the deficiency notices that led to the *Allen* litigation. It is unclear what prompted this change in the IRS's position, given that Congress had not altered the text of § 6501(c)(1) in any meaningful way over the past century. *See* Revenue Act of 1921 § 250(d), Pub. L. No. 67-98, 42 Stat. 227; *see also* Internal Revenue Code of 1954 § 6501(c)(1), Pub. L. No. 83-591, 68A Stat. 803.

Indeed, reviewing the evolution of § 6501 from its origin as § 250(d) of the Revenue Act of 1918 is instructive on understanding the proper interpretation. The context

provided by this predecessor statute confirms that Congress intended that only the taxpayer's intent to evade tax could trigger the unlimited limitations period that now appears in § 6501(c)(1).  *See Morrison-Knudsen Const. Co. v. Dir., Office of Workers' Comp. Programs*, 461 U.S. 624, 632–33 (1983) (examining the history and structure of the Compensation Act to aid in interpretation of a single statutory provision).

The fraud penalty and the fraud suspension of the statute of limitations appeared together in § 250 of the Revenue Act of 1918.  First, § 250(b) imposed certain penalties for underpayment when the underpayment resulted from the taxpayer's negligence or intent to evade tax.

> (b) As soon as practicable after the return is filed, the Commissioner shall examine it. . . .

> If the amount already paid is less than that which should have been paid, the difference shall . . . be paid upon notice and demand by the collector.  In such case if the return is made in good faith and the understatement of the amount in the return is not due to any fault *of the taxpayer*, there shall be no penalty because of such understatement.  If the understatement is due to negligence *on the part of the taxpayer,* but without intent to defraud, there shall be added as part of the tax 5 per centum of the total amount of the deficiency . . . .

> If the understatement is false or fraudulent with intent to evade the tax, then . . . there shall be added as part of the tax 50 per centum of the amount of the deficiency. . . .

Revenue Act of 1918 § 250(b), Pub. L. No. 54-254, 40 Stat. 1057 (emphases added).

Section 250(b) explains that the IRS will impose certain penalties when an underpayment is due to fault of

the taxpayer. For example, under § 250(b) the IRS could not impose any penalty when an underpayment was "not due to any fault of the taxpayer." If, however, the understatement was "due to negligence on the part of the taxpayer, but without intent to defraud," the statute imposed a penalty equal to five percent of the underpayment. Then, the final paragraph of § 250(b) expands on the situations involving "intent to defraud" and explains that "[i]f the understatement [was] false or fraudulent with intent to evade the tax," the IRS shall impose a penalty equal to fifty percent of the underpayment. In this way, the structure of § 250(b) and its use of "on the part of the taxpayer," demonstrates that the determination of whether and to what extent a taxpayer would be penalized for underpayment is based on the taxpayer's intent. The Government agrees that the fraud penalty provision in § 250(b) focuses solely on the taxpayer's own intent. *See* Oral Argument at 27:52–28:11 *available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2 014-5037.mp3* ("In subsection (b), Congress made it perfectly clear that they were talking about taxpayer's intent.").

Two subsections later, § 250(d) borrows the "false or fraudulent with intent to evade tax" language from § 250(b) and uses it to describe situations when the normal period for assessing tax may be extended indefinitely.

> (d) Except in the case of false or fraudulent returns with intent to evade the tax, the amount of tax due under any return shall be determined and assessed by the Commissioner within five years after the return was due or was made, and no suit or proceeding for the collection of any tax shall be begun after the expiration of five years after the date when the return was due or was made. In the case of such false or fraudulent returns, the amount of tax due may be determined at any time

after the return is filed, and the tax may be collected at any time after it becomes due.

Revenue Act of 1918 § 250(d).

Although § 250(d) does not expressly identify whose "intent to evade the tax" could be used to extend the limitations period, the mirroring language in § 250(b), which *is* directed to the taxpayer's intent, informs the interpretation of § 250(d). *See Morrison-Knudsen*, 461 U.S. at 633 ("[W]e have often stated that a word is presumed to have the same meaning in all subsections of the same statute . . . ."). With this in mind, it becomes abundantly clear that the focal point of § 250 is the intent *of the taxpayer*. The taxpayer's intent is central to determining whether to impose a penalty *and* whether the IRS may avail itself of an unlimited period to assess tax. As with § 6501(c)(1) and § 6663(a), discussed *supra,* the Government fails to explain why § 250(b) and § 250(d) should be understood differently.

Since 1918, the concepts within § 250 were separated and recodified into three statutory sections. *See* I.R.C. §§ 6663(a), 6664(c), 6501. However, nothing in the recodification and reorganization process altered the meaning of the terms "intent" and "fraudulent" as used in this predecessor statute. Section 6501(c)(1) maintains the same "false or fraudulent return with the intent to evade tax" language that § 250(d) originally used, as informed by § 250(b). The Government has not pointed to any statutory text or legislative history of any of the subsequent reenactments that justifies expanding beyond the taxpayer the universe of parties who can supply the requisite intent to evade tax to trigger § 6501(c)(1).[7]

---

[7]    In *Allen*, the Tax Court briefly mentioned § 6501's origin in the Revenue Act of 1918, but rejected its probative value based on a statutory amendment passed by the

This statutory history of § 6501(c)(1) confirms and further supports the interpretation that limits to the taxpayer the fraudulent intent required to trigger suspending the three year statute of limitations. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2004–05 (2012) (examining the "statutory context" and the statute "[a]s originally enacted" to construe a statutory term).

Both parties identify policy reasons for and against limiting the application of § 6501(c)(1) to cases involving fraudulent conduct by the taxpayer, as opposed to other parties that may have a role in a fraudulent tax return. These policy arguments are best directed to Congress, which has the power to amend and update the Code to

---

House Ways and Means Committee, which was ultimately rejected by the Senate Finance Committee. *Allen v. Comm'r*, 128 T.C. at 39 n.3. True enough, this amendment would have specified that the unlimited assessment period was triggered only by the taxpayer's intent to evade tax. *Id.* But, "failed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994) (internal quotation marks and citation omitted). This is especially true where, as in the case of § 250(d), the legislature discards a proposed amendment without discussion. *See Allen*, 128 T.C. at 39 n.3. "Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, *including the inference that the existing legislation already incorporated the offered change.*" *Cent. Bank of Denver*, 511 U.S. at 187 (emphasis added) (citation omitted).

account for situations that may not have existed a century ago.[8]

CONCLUSION

The language, structure, and history of the Code leads us to the conclusion that the Claims Court properly interpreted § 6501(c)(1) as limiting the IRS to the three-year limitations period unless the taxpayer possessed the intent to evade tax.

**AFFIRMED**

---

[8]    To the extent the dissent is concerned with removing a tool from the IRS's toolbox, however, we note that there are many ways the IRS can recoup tax underpayments from third parties who intentionally violate the law or encourage others to do so, not the least of which is through the criminal prosecution—with attendant restitution orders—of such persons. We note, moreover, that the IRS's need to resort to the strained statutory interpretation it urges upon us was due in large measure to its own delays and failure to act despite full disclosure of all information necessary to assess the legitimacy of the transactions reported. Indeed, the government concedes that it took the IRS twenty-seven months from the date that Jenkens & Gilchrist disclosed its list of tax shelter clients (which included the Pettinatis) to the date it initiated an audit of BASR's returns. *See* Appellant Br. 23 (citing J.A. 1703-04; J.A. 202). And, the Tax Court has expressly found that a tax return like the Pettinatis was sufficient on its face to disclose all relevant aspects of the transactions about which the IRS now complains. *See R & J Partners v. Comm'r,* No. 7166-06, 2009 U.S. Tax Ct. LEXIS 45, at *4-5 (Tax Ct. Oct. 23, 2009).

# United States Court of Appeals
# for the Federal Circuit

_____

**BASR PARTNERSHIP, WILLIAM F. PETTINATI,
SR., Tax Matters Partner,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

_____

2014-5037

_____

Appeal from the United States Court of Federal
Claims in No. 1:10-cv-00244-SGB, Judge Susan G.
Braden.

_____

O'MALLEY, *Circuit Judge*, concurring.

It is undisputed that the Internal Revenue Service
("IRS") ordinarily must assess taxes within three years
after a return is filed. On appeal, the parties dispute
which rules govern extension of that three year period for
taxes that are attributable to allegedly fraudulent part-
nership items. The government contends that the general
exception for fraudulent returns contained in Section
6501(c)(1) of the Internal Revenue Code ("I.R.C") applies
here and provides an unlimited assessment period, re-
gardless of the absence of any fraudulent intent on behalf
of the taxpayer. Appellees BASR Partnership and Wil-
liam F. Pettinati, Sr., Tax Matters Partner, (collectively,
"BASR") argue, to the contrary, that the specific rules set

forth in § 6229(c)(1) apply to allegedly fraudulent partnership returns and to tax attributable to allegedly false partnership items reported on the individual partners' returns and, alternatively, that if § 6501(c)(1) controls, the time for assessing a tax under that provision may not be extended where the taxpayer acts with no intent to evade tax. I agree with BASR on both points. More specifically, I agree with both BASR and the majority that, under § 6501(c)(1), it is the taxpayer (or possibly his authorized agent) who must have the requisite "intent to evade tax" before the IRS is authorized to go beyond the three year statute of limitations in § 6501.[1] And, because

---

[1]    In addition to the many cogent points made by the majority, it is worth noting one practical reality. Mayer spent fifteen years conceiving of and promoting the use of the transactions at issue here, even employing them for himself. No doubt, his primary intent was to make money by providing legal advice regarding these transactions and their structure. His business would have had little success if he were not able to provide credible grounds upon which the clients to whom he pitched these transactions could rest assured that they were legal. Now, after years of maintaining the contrary—and years after his clients assumed their tax returns were beyond attack— Mayer claims he personally intended that his clients would evade tax when he provided legal advice to them. On this basis alone, the government asserts it is free to pursue Mayer's clients without the restraint of any limitations period because, the government argues, "[t]he source of the fraud" is irrelevant. Appellant Reply 4. But that position cannot be squared with either the statutory language or the purpose behind the statutes of limitations in both § 6501 and § 6229: finality. The IRS should have the ability to pursue fraud by *taxpayers* without undue restriction, and should be permitted to pursue third parties who engage in improprieties that ultimately result

the government concedes that the taxpayers here did not act with that intent, I agree that the IRS's adjustments and penalty determinations were untimely. As a threshold matter, however, I believe that resolution of this appeal is governed by the specific rules Congress created to determine the limitations period for making assessments attributable to partnership items: § 6229.

Where, as here, the government is arguing that the statute of limitations remains open solely because of alleged fraud on a partnership return, the special rules set forth in § 6229 for partnerships must apply. Although the majority suggests that our prior case law requires application of § 6501(c)(1) to the exclusion of § 6229(c)(1), I disagree. *See* Majority Op. at 6 n.1. As explained below, the plain language of the statutory scheme, canons of statutory interpretation, legislative intent, and judicial precedent all indicate that § 6229(c)(1) is the governing limitations period for the circumstances at issue here. To hold otherwise would permit the government to reconstruct the statutory scheme in a way that renders § 6229 meaningless. Because application of § 6229 here leads to the same ultimate conclusion the majority reaches—which is that the Court of Federal Claims correctly determined that the Final Partnership Administrative Adjustment ("FPAA") was untimely—I join the majority opinion with the exception of footnote 1.

## I. Plain Language

Turning first to the statutory language, § 6501(a) provides that, ordinarily, the IRS must assess taxes "within 3

---

in the underpayment of taxes; indeed, it already has the tools to do both. It should not, however, be able to conflate the desire to accomplish those two goals by rendering meaningless the statute of limitations Congress put in place to assure finality for innocent taxpayers.

years after the return was filed." 26 U.S.C. § 6501(a). Subsections 6501(c)-(m) contain a number of exceptions to the standard three year period, including an indefinite extension permitting the IRS to assess tax at any time in the event of a "false or fraudulent return with the intent to evade tax." I.R.C. § 6501(c)(1). But to determine whether the standard three year limitations period is extended "in the case of partnership items," § 6501(n)(2) cross references § 6229. I.R.C. § 6501(n)(2) ("For extension of period in the case of partnership items (as defined in section 6231(a)(3), see section 6229.")).

Section 6229 is one of several provisions that Congress added to the Code when it enacted the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). As the majority recognizes, TEFRA was designed to coordinate procedures "for determining the proper treatment of 'partnership items' at the partnership level in a single, unified audit and judicial proceeding." *Alpha I, L.P., ex rel. Sands v. United States*, 682 F.3d 1009, 1019 (Fed. Cir. 2012).[2] The parties agree that whether a partnership return is fraudulent such that an extended statute of limitations period should apply is a "partnership item." *See Prati v. United States*, 603 F.3d 1301, 1307 (Fed. Cir. 2010) ("Based on *Keener*, we hold that the statute of limitations issue is a partnership item and that the Pratis and the Deegans were required to raise the limitations issue in the partnership-level proceeding prior to either entering settlement or stipulating to judgment in the Tax Court."); *Keener v. United States*, 551 F.3d 1358, 1366 (Fed. Cir. 2009) ("[T]he nature of a partnership's transac-

---

[2]    A "partnership item" is "any item required to be taken into account for the partnership's tax year" if the applicable regulations provide that the item "is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3).

tion—and, specifically, whether a partnership transaction is a 'sham'—is a partnership item.").

By its terms, § 6229 governs the limitations period for making assessments attributable to partnership items and generally allows the IRS three years from the date that a partnership tax return is filed to assess tax that is attributable to any partnership item. I.R.C. § 6229(a). Looking to the statutory text, we have explained that:

> Sections 6501 and 6229 operate in tandem to provide a single limitations period. When an assessment of tax involves a partnership item or an affected item, section 6229 can extend the time period that the IRS otherwise has available under section 6501 to make that assessment. Thus, the limitations period is the period defined by section 6501, as extended when appropriate by section 6229.

*Prati*, 603 F.3d at 1307 (internal citations omitted).

Section 6229 contains several exceptions that can extend the period for assessing tax that is attributable to partnership items. In particular, § 6229(c) contains a "[s]pecial rule in case of fraud" which: (1) applies only if at least one partner has "the intent to evade tax;" and (2) takes into consideration each individual partner's level of participation in the partnership return and, thus, in any fraud. I.R.C. § 6229(c)(1). For partners who sign or participate in the preparation of a partnership return which includes a false or fraudulent item, the tax may be assessed at any time. I.R.C. § 6229(c)(1)(A). In the case of all other partners, § 6229(c)(1)(B) gives the IRS six years, instead of three, to assess tax attributable to partnership items. For non-participating partners, the IRS is given this extra three year period without the burden of proving any "intent to evade tax" on behalf of those partners.

Other portions of §§ 6501 and 6229 likewise support the conclusion that § 6229 governs extension of the time in which the IRS can assess taxes attributable to partnership items.  For example, the only subsection of § 6229 that specifically identifies "[c]oordination with section 6501" provides that any extension by agreement between the IRS and the taxpayer under § 6501(c)(4) "shall apply with respect to the period described in subsection (a) only if the agreement expressly provides that such agreement applies to tax attributable to partnership items."  I.R.C. § 6229(b)(3).  By virtue of this statutory language, "normal extensions of a partner's personal limitations period pursuant to section 6501(c)(4) are NOT applicable to extend the period of limitations with respect to partnership items UNLESS the agreement expressly so provides." *Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r*, 114 T.C. 533, 567 (2000) (Parr, J., dissenting). Congress' decision to incorporate § 6501 into one section of § 6229 demonstrates that § 6501 does not control the time in which the IRS has to assess taxes attributable to partnership items without consideration of the specific rules set forth in § 6229.  And, if Congress had wanted to add a provision for coordination with § 6501(c) into § 6229(c), it could have done so.

Read in its entirety, the plain language of the statute makes clear that § 6229 governs whether and for how long the standard three-year period the IRS has to assess tax may be extended for tax attributable to partnership items.  The government does not dispute that the alleged fraud on BASR's return is a "partnership item" or that the allegedly fraudulent items on the partners' returns flow from that partnership item.[3]  Accordingly, § 6229(c)(1)

---

[3]   The government posits that § 6229(c)(1) should not apply here because "the United States does not rely on BASR's fraudulent returns, but rather on the Pettinatis'

dictates whether the standard three-year assessment period is extended due to alleged fraud on a partnership return.

## II. Canons of Statutory Interpretation

Reading § 6501(c)(1) to govern how long the limitations period is extended for partnership items violates at least two canons of statutory interpretation. The first is that "the specific governs the general." *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070-71 (2012). As noted, this is a partnership proceeding and § 6229(c)—entitled a "[s]pecial rule in case of fraud"—contains specific rules extending the statute of limitations for fraudulent items on partnership returns.

---

fraudulent returns, as the basis for an unlimited limitations period." Appellant Br. 59. According to the government, § 6501(c)(1) is the relevant exception to the limitations period with respect to a fraudulent taxpayer return. In its Answer to BASR's Complaint, however, the government asked for judgment in its favor "determining that the adjustments to the partnership returns of BASR Partnership made by the FPAA are correct." Answer at 8, *BASR P'ship v. United States*, No. 1:10-cv-244 (Fed. Cl. Aug. 10, 2010), ECF No. 11. And, it alleged that "the statute of limitations for assessing tax remains open in this case pursuant to 26 U.S.C. §§ 6501(c)(1) *and* 6229(c)(1)." *Id.* at 6 (emphasis added). As BASR points out, it is clear that the only reason the government believes the partners' returns were fraudulent is because of the alleged fraud on the partnership return. And, it is clear that, under TEFRA, no partnership item ever appears on a partner's return except as dictated by the partnership return itself. The government does not claim that the individual partners/taxpayers here committed any fraud, either in connection with the partnership return or in connection with their own individual returns.

Where, as here, the government is arguing that the statute of limitations remains open solely because the item on the partner's individual return flows from BASR's allegedly fraudulent partnership return, the rules applicable to partnerships should apply. Congress created a detailed and comprehensive scheme to govern how partnership returns are to be processed and addressed. As part of that scheme, the tax is paid only on the partner's individual returns, but its tax treatment is determined and assessed at the partnership level.

Perhaps more importantly, the government's reading of the statutory scheme renders § 6229(c)(1) superfluous, violating "the well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect." *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 633 (1973). As noted, § 6229(c)(1)(A) gives the IRS unlimited time to assess tax "attributable to any partnership item" against partners who, "with the intent to evade tax," signed or participated in the preparation of a partnership return which includes a false or fraudulent item. If the government were correct that a fraudulent partnership return can cause the partners' returns to be fraudulent within the meaning of § 6501(c)(1), then in any case where § 6229(c)(1)(A) would apply, § 6501(c)(1) would also apply to give the IRS an unlimited time to assess the same tax. Section 6229(c)(1)(A) would have no independent meaning because the fraud that satisfies that provision would always also satisfy § 6501(c)(1). Likewise, if a fraudulent partnership item reported on an individual partner's return makes that partner's return fraudulent under § 6501(c)(1)—regardless of whether that partner acted with an intent to evade tax—then the six year limitation contemplated in § 6229(c)(1)(B) becomes meaningless. Under what possible circumstances would that six year period ever apply?

Although this court has not specifically addressed the interpretation of and interplay between § 6501(c)(1) and

§ 6229(c)(1), the Tax Court sitting as a full court explained the relationship between these statutory provisions in *Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner*, 114 T.C. 533 (2000). There, the taxpayer explained that § 6229(c)(1)(A) "provides an unlimited section 6229(a) assessment period for deficiencies attributable to partnership items and affected items of a partner who, acting with intent to evade taxes, signs or participates in the preparation of a false or fraudulent partnership return." *Id*. at 547. The taxpayer argued that § 6229 provides a stand-alone statute of limitations for taxes attributable to partnership items and that § 6501 does not factor into the analysis. *Id*. at 537. According to the taxpayer, § 6229(c)(1)(A) would be "superfluous if the controlling statute of limitations on assessments of deficiencies attributable to partnership items and affected items is contained in section 6501, because section 6501(c)(1) contains an identical unlimited assessment period." *Id*. at 547.

The Tax Court found that § 6229(c)(1) retained independent meaning, however, because it "deals specifically with partnership returns," and, "[u]nlike section 6501(c)(1), section 6229(c)(1) applies only to tax attributable to partnership items or affected items." *Id*. at 548-49. The court explained that the time to assess tax against an individual partner could remain open under § 6501(c)(1) based on that partner's fraud *unrelated* to the partnership return:

> Section 6501(c)(1) would literally apply to a partner whose individual or corporate return was fraudulent regardless of whether the partnership return was fraudulent. Section 6501(c)(1) allows for an unlimited period for assessing any tax for the year in which a fraudulent return was filed regardless of whether some of the tax may be due to nonfraudulent items. Thus, if section 6501(c)(1) applies to a particular taxable year, it clearly

permits an open-ended period for any assessment
of tax even if part of the assessment was based on
nonfraudulent partnership items.

*Id.* at 548 (internal citations omitted). In other words, the
Tax Court has taken the position that § 6501(c)(1) applies
in the partnership context only when the partner's return
is fraudulent for reasons independent from the partner-
ship return. *See id.* The government's suggestion that a
fraudulent partnership return makes its partners' returns
fraudulent collapses the distinction between § 6501(c)(1)
and § 6229(c)(1)(A) because fraud that would trigger
§ 6229(c)(1)(A) would, under the government's theory,
always cause § 6501(c)(1) to apply. And, as the Tax Court
noted, unlike § 6501(c)(1), § 6229(c)(1)(B) "provides a
separate 6-year period for assessment of taxes for part-
ners who did not sign or participate in the preparation of
the fraudulent return." *Id.* at 549.

Read together, therefore, § 6229(c)(1) and § 6501(c)(1)
reveal that the fraud on an individual partner's return
that can keep that partner's statute of limitations open
under § 6501(c)(1) must be separate from any fraud on or
flowing from the partnership return. *See id* at 548-49
(noting that "section 6229(c)(1)(A) applies to tax attribut-
able to partnership items if it is the signer's own taxes
that will be reduced, but that possible limited overlap
with section 6501(c)(1) is insufficient for us to conclude
that section 6229(c)(1) is superfluous, given the disjunc-
tion between intent and underpayment contained in
section 6229(c)(1)"). The government's theory that fraud
on a partnership return renders the partners' individual
returns fraudulent and thus subject to § 6501(c)(1) would
write § 6229(c)(1) out of the statute.

III. CONGRESSIONAL INTENT

In addition to rendering § 6229(c)(1) meaningless, the
government's construction of the statutory scheme vio-
lates Congressional intent. The express language of

§ 6229(c)(1) reflects Congress' intent that at least one partner in a partnership must intend to evade tax for the partnership return to be considered fraudulent for purposes of extending the statute of limitations. *See* I.R.C. § 6229(c)(1) ("If any partner has, with the intent to evade tax, signed or participated directly or indirectly in the preparation of a partnership return which includes a false or fraudulent item," the IRS has additional time to assess tax attributable to that item depending on the partner's level of involvement). Indeed, this court has recognized that "[a] purpose of the 'intent to evade taxes' requirement [in Section 6229(c)(1)] is to protect limited partners from an extension of the Commissioner's time for assessing additional taxes against them where the partner who signed the return did not know that it contained false items." *Transpac Drilling Venture v. United States*, 83 F.3d 1410, 1415 (Fed. Cir. 1996).

The statutory language further reveals Congress' intent that the IRS has *only* an additional six years to assess tax attributable to partnership items against partners who were not involved in preparing the fraudulent partnership return. *See* I.R.C. § 6229(c)(1)(B). If the government were correct that § 6501 controls, then the IRS could bypass the six-year limitation period in § 6229(c)(1)(B) and rely solely on § 6501(c)(1) to extend indefinitely the time that the IRS has to assess tax against any partner. It would make no sense for Congress to enact § 6229(c)(1)(B) to extend the statute of limitations from three to six years if the government is right that the same exact conduct permits the IRS to assess the tax "at any time" under § 6501(c)(1).

Given this statutory structure, § 6229(c)(1) applies to extend the time that the IRS has to assess tax attributable to partnership items against all partners depending on their level of involvement with the return, whereas § 6501(c)(1) extends the time the IRS has to assess tax against a specific partner based on fraud that is not

attributable to partnership items.  *See Rhone-Poulenc*, 114 T.C. at 548-49.  To hold otherwise would contravene Congress' express intent.

## IV.  APPLICABLE CASE LAW

Finally, courts, including this one, have applied § 6229(c)(1)—not § 6501(c)(1)—to determine the statute of limitations applicable where the partnership's tax return contains false or fraudulent partnership items.  *See Transpac*, 83 F.3d at 1414-15 (applying Section 6229(c)(1) where one of the partners signed the partnership's return "which reported false losses" knowing "that the limited partners would use those losses to reduce their own taxes"); *see also River City Ranches v. Comm'r*, 313 F. App'x 935, 937 (9th Cir. 2009) ("Section 6229(c)(1) requires consideration of the intent of the partner who participated in the preparation of the partnership returns . . . . Whether the individual partners intended fraud on their individual returns has no bearing on a partnership level proceeding.").

The government cites our decision in *AD Global Fund, LLC v. United States*, 481 F.3d 1351 (Fed. Cir. 2007) for the proposition that § 6229 "does not create an independent statute of limitations," but instead "creates a minimum period during which the period for tax assessments for partnership items may not end."  *Id.* at 1354 (internal citation and quotation marks omitted).  There, the taxpayer argued that § 6229(a) "provides a separate statute of limitations for tax assessments on partnership items and that the FPAA was untimely under § 6229(a)."  *Id.* at 1353.  We rejected that argument, finding that "Section 6501 explicitly provides that it applies to any tax imposed by the title, which would include tax imposed for partnership items."  *Id.* at 1354.  We subsequently reiterated that: (1) Sections 6501 and 6229 work together to provide a "single limitations period"; and (2) when a tax assessment "involves a partnership item or an affected item,

section 6229 can extend the time period that the IRS otherwise has available under section 6501 to make that assessment." *Prati*, 603 F.3d at 1307.

The Court of Federal Claims and the majority here read *AD Global* to mean that § 6501—not § 6229—controls our analysis with respect to the timeliness of the FPAA. *See BASR P'ship v. United States*, 113 Fed. Cl. 181, 192 (2013); Majority Op. at 6 n.1. To be sure, *AD Global* held that § 6229(a) creates a minimum period of limitations for partnership items and that minimum period "may expire before or after the maximum period provided in § 6501." *AD Global*, 481 F.3d at 1354. But *AD Global* was focused on the interplay between § 6501(a) and § 6229(a); it had no occasion to consider the relationship between § 6501(c) and § 6229(c). Unlike the taxpayer in *AD Global*, BASR does not argue that § 6229 creates an independent statute of limitations for partnership items that can cut short the standard three-year period provided in § 6501(a). Instead, it maintains that § 6501(a) creates the standard time period for assessing tax, while § 6229 contains special rules that govern when that time period can be extended for tax treatment of partnership items. This approach—which I believe is consistent with the statutory scheme—remains true to our prior indication that "Sections 6501 and 6229 operate in tandem" while at the same time recognizing that Congress expressly created more detailed rules for fraudulent partnership returns in § 6229(c)(1). *See Prati*, 603 F.3d at 1307.[4]

As applied here, because the government has not alleged that any *partner* acted with intent to evade tax, the standard three year limitations period contained in § 6229(a) applies. And, because BASR filed the partner-

---

[4]    To the extent that our decision in *AD Global* forecloses this approach, I believe it should be revisited.

ship tax returns at issue in October 2000, the time the IRS had to assess tax attributable to partnership items expired in October 2003, more than six years before the IRS issued the FPAA to BASR in 2010. *See BASR*, 113 Fed. Cl. at 184-85. Accordingly, the time the IRS had to assess additional tax against BASR's admittedly innocent partners expired before the IRS issued the FPAA that gave rise to this case.

## V. CONCLUSION

Although I agree that the decision in this case is correct if we are required to apply § 6501, and therefore concur in the court's judgment, I do not agree that § 6501 is controlling in these circumstances, where the allegedly fraudulent items flow only from a partnership return. For the reasons discussed above, I believe that § 6229 works in conjunction with § 6501, and that, in the partnership context, § 6229(c)(1) contains the rules that dictate when fraudulent items on a partnership return extend the time the IRS has to assess tax attributable to partnership items. Section 6501(c) governs the statute of limitations as to all other items on an individual partner's return, but not the partnership items at issue here.

# United States Court of Appeals
# for the Federal Circuit

---

**BASR PARTNERSHIP, WILLIAM F. PETTINATI, SR., Tax Matters Partner,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2014-5037

---

Appeal from the United States Court of Federal Claims in No. 1:10-cv-00244-SGB, Judge Susan G. Braden.

---

PROST, *Chief Judge*, dissenting.

The Internal Revenue Service ("IRS") normally has three years after a return is filed in which to assess tax, but under the Internal Revenue Code ("I.R.C." or "Code") § 6501(c)(1) that period is extended indefinitely "in the case of a false or fraudulent return with the intent to evade tax." The majority construes § 6501(c)(1) to encompass only the intent of the taxpayer and not the intent of the taxpayer's hired tax professional. In my view, the statute means what it says: the three-year limitation does not apply if the intent to evade tax manifests in a fraudulent return.

The majority eschews the statute's plain meaning based on "[a] survey of other fraud-related provisions of the Code," which "contemplate fraud by the taxpayer" only. Majority Op. at 12 (emphasis omitted). But all this survey reveals is that Congress can write a provision that explicitly applies only to taxpayer fraud. Some Code sections concern only the taxpayer's intent to evade tax, and other rules also encompass the intent of the taxpayer's hired professionals. In the case of § 6501(c)(1), Congress did not limit the statute to the taxpayer's intent. Thus, I respectfully dissent.[1]

## I. PLAIN MEANING

I begin, as I must, with the standard for construing § 6501(c)(1): "Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924). As a corollary, "limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government." *Badaracco v. Comm'r*, 464 U.S. 386, 392 (1984) (quoting *Lucia v. United States*, 474 F.2d 565, 570 (5th Cir. 1973)). The majority brushes this standard aside by distinguishing the circumstances of *Badaracco* in a footnote. Majority Op. at 12 n.5. But the distinction is irrelevant—*Badaracco* states a general standard "long ago pronounced" by the Supreme Court and reiterated in every case since. *Badaracco*, 464 U.S. at 391; *see Dupont*, 264 U.S. at 462; *Lucas v. Pilliod Lumber Co.*, 281 U.S. 245, 249 (1930).

With this pro-government rule of construction in mind, I "naturally turn first to the language of the stat-

---

[1]    On the threshold issue of which statute applies, I conclude that § 6501(c)(1), not § 6229(c)(1), is the relevant law. I therefore join footnote 1 of the majority opinion.

ute." *Badaracco*, 464 U.S. at 392.  I.R.C. § 6501(a) states
the general statute of limitations:  "Except as otherwise
provided in this section, the amount of any tax imposed by
this title shall be assessed within 3 years after the return
was filed . . . ."  Subsection c provides an exception:  "In
the case of a false or fraudulent return with the intent to
evade tax, the tax may be assessed, or a proceeding in
court for collection of such tax may be begun without
assessment, at any time."  I.R.C. § 6501(c)(1).

The key phrase is "a false or fraudulent return with
the intent to evade tax."  Significantly, the statute's plain
language does not limit the intent to evade tax to only the
taxpayer's intent.  Rather, the "return" possesses "the
intent to evade tax."  Therefore, the obvious construction
of the statutory text is that the intent to evade tax must
be present in a false or fraudulent return, irrespective of
who possesses that intent.  This plain reading of the
statute is bolstered by the pro-government canon of
construction for statutes of limitations.  *See Badaracco*,
464 U.S. at 391–92.

I need proceed no further.  Indeed, the "cardinal can-
on" of statutory construction is that "courts must presume
that a legislature says in a statute what it means and
means in a statute what it says there.  When the words of
a statute are unambiguous, then, this first canon is also
the last: judicial inquiry is complete."  *Conn. Nat'l Bank v.
Germain*, 503 U.S. 249, 253–54 (1992).  The text of
§ 6501(c)(1) places no limits on who must have the intent
to evade tax.  The statute is unambiguous.

## II.  OTHER TAX CODE SECTIONS

The majority's response to the plain meaning of the
statute is to "examin[e] that language in light of its place
in the statutory scheme."  Majority Op. at 11.  Of course,
the context in which a phrase appears adds to its mean-
ing.  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341
(1997) ("The plainness or ambiguity of statutory language

is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). I have already considered the context of "intent to evade tax" above in discussing the surrounding language in § 6501(c)(1) and in § 6501 generally. The majority goes further, and searches the entire tax code for other mentions of "the intent to evade tax." In fact, the sections cited by the majority for "context" are not even in the same chapter as § 6501. This is not analogous to the three cases cited by the majority for the importance of analyzing statutory language in context. In all three cases, the Supreme Court considered only closely proximate statutory provisions.

Even so, a review of the other Code sections discussed by the majority reveals only that Congress knows how to explicitly limit the intent to evade tax to the taxpayer. Adopting my interpretation of "the intent to evade tax" does not cause the phrase to be used inconsistently. For example, take I.R.C. § 7454(a), on which the majority relies. Section 7454(a) states that "[i]n any proceeding involving the issue whether *the petitioner* has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary." I.R.C. § 7454(a) (emphasis added). Unlike § 6501(c)(1), § 7454(a) is expressly limited to cases where the government alleges that the taxpayer had fraudulent intent. The reason for this limitation is simple: before § 7454(a) was enacted in 1928, the taxpayer had to prove that he did not act with intent to evade tax. Congress shifted the burden of proof on taxpayer fraud to the government because "[p]roceedings before the board involving that issue in some respects resemble penal suits." S. Rep. 960, 70th Cong., 1st Sess., at 38 (May 1, 1928). This concern does not apply if another's alleged intent to evade tax is at issue. Therefore, if anything, § 7454(a) demonstrates that Congress only limits the intent to evade tax to the tax-

payer's intent in specific circumstances. Without such express limitation, the intent to evade tax encompasses others who cause a return to be fraudulent.

Consider also § 6229(c)(1), which involves the statute of limitations for assessing tax to partnerships. Section 6229(c)(1) applies "[i]f any *partner* has, with the intent to evade tax, signed or participated directly or indirectly in the preparation of a partnership return which includes a false or fraudulent item . . . ." (Emphasis added). As in § 7454(a), Congress expressly restricted the intent to evade tax to a specific individual—in the case of § 6229(c)(1), a "partner." Again, this shows that Congress can limit "the intent to evade tax" to the taxpayer's intent if it so wishes. If "the intent to evade tax" encompasses only the taxpayer's intent—as advocated by the majority—the restrictions to "the petitioner" in § 7454(a) and to "any partner" in § 6229(c)(1) would be superfluous. The majority's construction thus violates the "cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute . . . ." *See Williams v. Taylor*, 529 U.S. 362, 364 (2000).

The majority also places heavy reliance on § 250 of the Revenue Act of 1918. Majority Op. at 19–23. First, the import of a nearly 100 year old statute on the meaning of a different statute today is slight. Second, § 250 falls into the same pattern outlined above—when Congress wants to limit intent elements to the taxpayer's intent, it does so expressly. Section 250(b), which outlined penalties applicable to erroneous returns, stated in part: "In such case if the return is made in good faith and the understatement of the amount in the return is not due to any fault *of the taxpayer*, there shall be no penalty because of such understatement." Revenue Act of 1918 § 250(b), Pub. L. No. 54-254, 40 Stat. 1057 (emphasis added). Section 250(b) went on to provide a five percent penalty "[i]f the understatement is due to negligence *on the part of the taxpayer*, but without intent to defraud,"

and a fifty percent penalty "[i]f the understatement is false or fraudulent with intent to evade the tax . . . ." *Id.* (emphasis added). This section, which referenced the taxpayer twice, assigned tax penalties to the taxpayer based only on the taxpayer's intent.

On the other hand, the statute of limitations, § 250(d), did not mention the taxpayer. Section 250(d) stated, "[e]xcept in the case of false or fraudulent returns *with intent to evade the tax*, the amount of tax due under any return shall be determined and assessed by the Commissioner within five years after the return was due or was made . . . ." *Id.* (emphasis added). Therefore, because § 250(d) did not limit the intent to evade tax to the taxpayer's intent as in § 250(b), the statute of limitations did not apply to fraudulent returns involving the intent to evade tax generally.

The majority interprets § 250 differently. According to the majority, because only the taxpayer's intent is at issue in § 250(b), the general reference to "intent to evade the tax" in § 250(d) must also be limited to the taxpayer's intent. However, I do not find this conclusion to be "abundantly clear." Majority Op. at 22. It is equally reasonable—if not more reasonable—to assume that the intent inquiry is restricted to the taxpayer's intent only where the statutory subsection explicitly refers to the taxpayer's intent, as in § 250(b). Granted, § 250(b) is certainly relevant context for construing § 250(d). But given that Congress did not restrict the intent element in § 250(d) to the taxpayer's intent—as it did in § 250(b)— the requisite intent to evade the tax could be found in others, such as tax professionals hired by the taxpayer. Finally, if there is any remaining doubt, we must turn to the standard for construction, which requires that we strictly construe § 6501(c)(1) in favor of the government. *See Badaracco*, 464 U.S. at 392.

### III. PURPOSE OF § 6501(c)(1)

Indeed, it makes perfect sense to impose penalties on the taxpayer only when the taxpayer intended to evade the tax, while at the same time allowing the IRS to collect taxes based on an understated fraudulent return at any time. Given that the taxpayer must pay any tax penalty, Congress may reasonably only intend to penalize the taxpayer when the taxpayer is culpable. *See* I.R.C. § 6664(c)(1) (excepting taxpayers from the penalty if "there was a reasonable cause" for the underpayment and they "acted in good faith"). A different rationale applies to the statute of limitations. Excepting fraudulent returns from the statute of limitations does not penalize the taxpayer because the taxpayer must only pay the taxes it properly owed. It is thus inconsequential whether the taxpayer perpetrated the fraud or whether another individual is responsible. Moreover, "fraud cases ordinarily are more difficult to investigate than cases marked for routine tax audits. Where fraud has been practiced, there is a distinct possibility that the taxpayer's underlying records will have been falsified or even destroyed." *Badaracco*, 464 U.S. at 398. Thus, the lack of a statute of limitations for fraudulent returns with intent to evade tax in § 6501(c)(1) (and § 250(d)) reasonably compensates the government for the unique difficulty involved in discovering fraud and determining the taxpayer's true tax liability.[2]

Finally, this case matters. The majority removes a key tool from the IRS's toolbox for policing the submission of fraudulent tax returns. Nearly all taxpayers with significant sums at issue employ a tax preparer. Often, the IRS uncovers fraudulent returns by discovering the

---

[2]    Indeed, in this case the government contends that numerous additional transactions were performed purely "to throw off suspicion." *See* Appellant's Br. 45–47.

tax professionals who perpetrate fraud. It is not an easy matter to discover fraud, fully investigate it, and determine the proper tax liability within three years. *See id.* It is even more difficult to prove that a taxpayer knew of a tax professional's fraud and acted with intent to evade tax. Nonetheless, the majority ties the IRS's hands behind its back—without impossibly speedy sleuthing or smoking gun evidence, the IRS cannot collect taxes owed and the perpetrators make away scot free.

## IV. CONCLUSION

To summarize, the majority asserts that "the intent to evade tax" in § 6501(c)(1) concerns only the taxpayer's intent because Congress—using different language in different context in other chapters of the Code—expressly limits the intent to evade tax to the taxpayer's intent. I disagree. Congress "says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank*, 503 U.S. at 253–54. Here, Congress says that § 6501(c)(1) applies "in the case of a false or fraudulent return with the intent to evade tax." I.R.C. § 6501(c)(1). Nowhere does Congress limit § 6501(c)(1) to only those circumstances where the taxpayer has the intent to evade tax. In this case, it is undisputed that Mayer, the taxpayer's lawyer, acted with the intent to evade tax and caused the return to be fraudulent. Accordingly, I conclude that the BASR return is fraudulent "with the intent to evade tax," such that "the tax may be assessed . . . at any time." I.R.C. § 6501(c)(1).